STATE, EX REL. FRITZ, PROS. ATTY., v. GRAY ET AL.

*Corporations—Voting at annual meeting—Questions determined by number of shares, not owners, when—Adjournment of meeting without electing directors.*

1. At an annual meeting of the stockholders of a corporation for profit, organized under the laws of Ohio, but not governed by the provisions of Section 8638, General Code, all questions concerning which there is a division of opinion should be determined by the number of shares of stock voted thereon rather than by the number of owners of stock voting.

2. At an annual meeting of the stockholders of a corporation for profit, organized under the laws of Ohio, but not governed by the provisions of Section 8638, General Code, and regularly convened, all of the stock of the corporation was represented in person or by proxy, a motion was made to adjourn the meeting without the election of directors, and a majority of the shares of the corporation were voted against such motion:

*Held,* that against the protest of the owners of a majority of the shares of stock such motion was not properly declared carried, although a large majority of the *owners* of stock voted in favor of such adjournment.

(Decided October 16, 1925.)

Court of Appeals for Wayne county.

IN QUO WARRANTO.

*Mr. Walter J. Mougey; Messrs. Wertz & Breitenstein,* and *Messrs. Bulkley, Hauxhurst, Jamison & Sharp,* for plaintiff.

*Messrs. Weygandt & Ross,* for defendants.

[1] Corporations, 14 C. J. § 1380; [2] Id., § 1436.

WASHBURN, J.    This is a proceeding in *quo warranto*, and is a contest between two factions among the stockholders of The Wooster Milling & Grain Company.    One faction, for the purpose of brevity, may be referred to as the Smith faction, and the other as the Gray faction.

The Smith faction is owner of more than a majority of the stock of the corporation, and for a number of years that faction had been in control of the affairs of the company.    Smith, who was president, was the owner of more than 500 shares of stock, and some time in March he caused the secretary to transfer the stock to the name of his wife and placed the certificate so made out in his box at the bank, the key to which was kept in his house. He and his secretary then abandoned the company and left for parts unknown.    After his departure the certificate of stock was found by the wife in the box, and, by arrangements with her, the Gray faction then took charge of the affairs of the company, she giving to her son-in-law a general power of attorney to vote her stock.    Said transfer of stock from Mr. Smith to his wife was recognized by the company and the Gray faction as legal and proper, and such stock, through the power of attorney, participated in the reorganization of the company, by which the name of the company was changed and the members of the Gray faction were selected as officers of the company.    After some time, Mr. Smith returned and made his peace with his wife.    That was before July 1, 1925, the date for the holding of the annual meeting.

On July 1, 1925, at the offices of the company, the stockholders of the company met in annual meeting for the purpose of electing a board of directors.

The secretary of the company made up a list of the stockholders who were entitled to vote, and that list included Mrs. Smith as the owner of more than 500 shares of the stock, and at that meeting there were present, either in person or by proxy, the owners of all of the stock of the corporation, the Smith faction holding more than a majority of the stock.

The Gray faction, for the purpose of gaining time in which to file a financial report, which was then not ready, but which it was expected would be ready in a short time, moved to adjourn the stockholders' meeting to July 15, which motion was seconded. On that motion the secretary called the name of each owner of stock, and each owner of stock, either in person or by proxy, voted upon the motion. Both factions were represented by attorneys. The attorneys for the Smith faction contended that the vote on the motion should be determined by the number of shares of stock voting for or against the same, and when the names of the owners of the Smith stock were called they announced their vote by shares which totaled more than a majority of the shares of the corporation as being opposed to the adjournment.

The Smith faction was but three in number, and the Gray faction was fourteen in number. The chairman of the meeting was of the Gray faction, and, although a majority of the shares of stock voted against the adjournment, the individual owners of the stock, by a large majority, voted in favor of the adjournment. The chairman of the meeting announced that the meeting was adjourned, the Smith faction objecting, and insisting that the motion to adjourn was lost. The Smith faction then

announced that the meeting was not adjourned, but would be continued, whereupon one small stockholder and the attorney for the Gray faction left the meeting. The Smith faction next requested the chairman to proceed with the meeting and the election of directors, which he declined to do, saying that the meeting had been adjourned. The Smith faction then called upon the secretary to perform the duties of secretary and proceed with the election of directors, which she declined to do, and thereupon the Smith faction proceeded to the election of a chairman and secretary, none of the Gray faction participating in the proceeding.

While most all of the owners of the stock represented by the Gray faction remained present in the room, either in person or by proxy, they specifically declined to take part in the proceedings, stating that they were there for another purpose and protesting that the meeting had been adjourned, but the Smith faction proceeded with the election of directors, and by the Smith faction vote, representing more than a majority of the shares of stock, three members of the Smith faction were elected directors, and later on, during the same day, said directors held a meeting and elected officers, and the following day demanded that the Gray officers step aside and turn over the business and affairs of the corporation to the new officers, which the Gray faction declined to do, and this action in *quo warranto* is brought by the Smith faction to oust the holdover officers of the company, who belong to the Gray faction, and to put the officers elected by the Smith faction in control of the affairs of the company.

There are some preliminary questions raised by

the parties, which should first be disposed of. By the by-laws of the company the board of directors consists of five members, and the Smith faction selected but three.

It is claimed that inasmuch as but three directors were selected by the Smith faction, it is impossible to tell which three of the old directors were displaced, and that therefore the selection of the new board is illegal, but this question is disposed of in *State, ex rel. Price, Atty. Genl., v. Du Brul,* 100 Ohio St., 272, wherein it was decided that if a majority of the board of directors are selected at an annual meeting they constitute a board of directors, and as such board succeed the old board, and that none of the members of the old board hold over under such circumstances.

It is next contended that one of the Smith faction who was present and attempted to vote 75 shares of stock was not entitled to do so, for the reason that the shares had not been transferred on the books of the company for the ten days preceding the annual meeting. In this contention we determine that the Gray faction is right, but that determination does not affect the result of this case, for, disregarding such 75 shares, the Smith faction at all times had a majority of the shares of stock of the company.

It is next contended that the son-in-law, who represented Mrs. Smith, was not entitled to vote her 500 and more shares of stock, because his power of attorney did not have thereon the revenue stamp required by the United States laws; and because the power of attorney was the same power of attorney used at previous meetings, and was not filed at the meeting of July 1, 1925; and because the

party holding the proxy attempted to vote 10 shares more than Mrs. Smith then owned; and because the proxy named the company as the A. G. Smith Milling Company, as it was when the proxy was signed, instead of the Wooster Milling & Grain Company, which was the name of the company at the time of the meeting.

We determine this contention against the Gray faction, holding that the power of attorney was not invalidated by the fact that it bore no revenue stamp, nor by the fact that it referred to the company by the name given it in the certificate of stock, holding also that the power of attorney was a general power of attorney to vote whatever stock Mrs. Smith had—not any specific number of shares, nor at any special meeting, but at any meeting until said power of attorney was revoked—and that such power of attorney being on file in the offices of the company and unrevoked was valid

In reference to the effect of there being no revenue stamp upon the power of attorney, it is proper to call attention to the fact that the law requiring such revenue stamp was designed primarily for the raising of revenue, and not in any manner for the purpose of protecting the public against fraud or imposition or of safeguarding the public health or morals, and therefore a failure to comply with the statute does not render the transaction void unless the statute itself makes invalid a power of attorney that is not properly stamped, even although a penalty is exacted for noncompliance with the law. There are many authorities holding that courts will look to the language of the statute, its subject-matter, and the wrong or evil it seeks to remedy or prevent, that is, the purpose sought to

be accomplished by its enactment, to determine whether a transaction governed by such statute is void if the statutory requirements be not followed, or, whether, there being no direct provision making such transaction void, the penalty provided by the statute for the failure to observe it is all that is to be exacted. In this case it is plain that the penalty is all that is to be exacted.

In this connection it is significant that the revenue act as it once existed not only provided a penalty for its violation, but contained a direct provision making powers of attorney invalid while remaining unstamped, and that the present revenue act has omitted that provision and now imposes only a penalty for the violation of the law.

It is also contended that the Mrs. Smith stock could not be properly voted even by herself, because the stock, being a gift from her husband, was never delivered to her, and because, when the new certificate of stock to her was made out, the old certificate of stock to Smith was not surrendered to the company and canceled.

The evidence upon the question of whether or not the old certificate was surrendered is simply this: that the Gray faction, when they took control, were unable to find in the files of the company the old certificate of Mr. Smith; that a very thorough and diligent search had been made and it could not be found. Smith, and his secretary, who issued the new stock, both testified that at the time the new stock was issued to Mrs. Smith the old certificate was surrendered to the company and was left among papers of the company when they went away. The only reason for making the contention that the failure to surrender the old stock deprived

the possessor of the new certificate of the right to vote is that a regulation of the company provides that "No transfer shall be valid until the surrender of the previous certificate, and a payment of all dues upon the same." The testimony in this case tending to support the contention that the old certificate was not surrendered is merely negative testimony, and the testimony that it was surrendered is the positive testimony of two witnesses, and, under the circumstances of this case, we cannot find that it has been established by a preponderance of the evidence that the old certificate was not surrendered. Moreover, Mr. Smith, who transferred the stock to his wife, was present at the meeting and by his conduct insisted that his wife owned the stock.

But if the old certificate had not been surrendered, the Gray faction and the corporation itself were estopped from taking advantage thereof at the time of this meeting, because the evidence establishes that soon after the departure of Mr. Smith the company and the stockholders thereof recognized the transfer to Mrs. Smith as valid, and in the transaction of all of the business subsequent to that time such transfer of the stock had been recognized as valid. It was with the recognition of the validity of that stock that the officers belonging to the Gray faction were selected and were in control of the affairs of the company, and, all the officers and all the stockholders of the company having recognized such transfer as legal for so long a time, none of them is now in a position, under the circumstances of this case, to question the legality of the stock because of failure to surrender the old certificate.

Our attention is called to a regulation of the company which provides that "A quorum shall consist of a majority of stockholders in number and owning a majority of the shares of stock represented by stockholders present or by proxy," and it is contended, not only that the corporation had power to adopt such regulation, but that such regulation requires the presence of a majority of the stockholders in number in order that there may be a valid election of directors, and that after the meeting was adjourned there was not such number of stockholders present and participating in the meeting at which the Smith faction directors were elected.

While it may be true that corporations for profit in Ohio have the power to provide the number of shares necessary to be present at a stockholders' meeting to constitute a quorum (*State, ex rel. Webber, Pros. Atty., v. Shaw,* 103 Ohio St., 660), it is certainly true that such corporations do not have the power to make the additional requirement that the quorum shall consist also of a certain number of the individuals who may own the stock in the corporation. If the corporation desires to so limit the voting power of its stockholders and the shares of its stock, it must comply with Section 8638, General Code.

Section 8704, General Code, provides that when no other provision is especially made a corporation by its regulations may provide "(2) The number of stockholders or members constituting a quorum." We hold that the word "stockholders" there used refers to corporations for profit, and that the word "members" refers to corporations not for profit.

But assuming in this case that said regulation was valid, and that its force and effect is as claimed by the Gray faction, we are of the opinion that when the meeting convened, there being present in person or by proxy not only stockholders owning a majority of the stock, but also a majority of the stockholders in number, it was proper and legal to proceed with the election of directors, and that after the meeting began, unless the same was properly adjourned, it would not be possible for merely a majority of the stockholders in number to withdraw from the meeting and prevent the remaining owners of a majority of the stock from electing the directors.

In addition to these considerations, the evidence is that after the attempted adjournment the owners of practically all the shares of stock remained in the room until after the election was had by the Smith faction, and we are clearly of the opinion that at the time of such election there was a quorum present under the regulation in question, that is, not only stockholders owning a majority of the stock, but a majority of the stockholders in number. It is true that some of them were protesting that they were not present for the purpose of the meeting; but they were there for the purpose of the meeting when the meeting began, and they remained there throughout, and their protest that they were not there for the purpose of the meeting did not break the quorum that was present when the meeting began.

This brings us to the real and serious question in this case—that is, whether or not, at an annual meeting of stockholders held for the purpose of electing directors of a corporation for profit, the

vote upon all matters upon which there is a division must be determined by the shares of stock voting rather than by the number of owners of stock voting.

We have given due consideration to the arguments of counsel and the authorities cited upon this interesting question, and have reached the conclusion that the vote of a stockholder at an annual meeting for the election of directors is based upon the extent of the interest of that stockholder in the corporation, as shown by the number of shares owned by him, and that this applies to all questions arising at the meeting upon which there is a division of opinion and as to which there is a timely request to permit such stockholder to have his vote counted in accordance with the number of shares owned by him.

Section 8638, General Code, provides that a corporation *may* provide in the articles of incorporation that each stockholder, irrespective of the amount of stock he owns, shall be entitled *to one vote and no more* at an election of directors, or upon any subject submitted at a stockholders' meeting, and that when such provision is made the corporation shall be governed thereby, and, of course, when no such provision is made, then the corporation is governed by the provisions of Section 8636, which prescribes that at the election of directors each stockholder shall have the right to vote in person or by proxy the *number of shares owned by him,* and that directors shall not be elected in any other manner, and that a majority of the number of shares shall be necessary for a choice.

It is true that at the common law each stockholder in a stock corporation had but one vote at

a stockholders' meeting, no matter how many shares he owned, but the whole subject is now governed, not by common law, but by our statutes, and our whole scheme of corporations for profit is based upon the fact that stockholders are interested not equally, but in proportion to the number of shares held by them, and the textbooks upon the subject, and the decisions generally, recognize the principle of the control of private business corporations by the majority in interest rather than the majority in number of the stockholders, and it is not difficult to understand the injurious results of committing to the control of the owners of a minority of the stock the regulation of the corporation's affairs in matters usually controlled by the owners of a majority; that is not done in Ohio unless the articles of incorporation clearly give such control. And it is generally held that not only in elections, but in voting on any other subject, the majority of stock controls, unless there is a statutory provision to the contrary, or fraud. As stated in 3 Fletcher on Corporations, Section 1647:

"A by-law or a charter or statutory provision requiring the affirmative vote of a majority of the stockholders, or of a majority of those present at the meeting, means a majority in interest rather than a majority in number only."

See also *Toledo Trac., Light & Power Co.* v. *Smith*, 205 Fed., 643; *Western Cottage Piano & Organ Co.* v. *Burrows*, 144 Ill. App., 350; *Weinburgh* v. *Union St. Ry. Adv. Co.*, 55 N. J. Eq., 640, 37 Atl., 1026, and *State, ex rel. Mitchell*, v. *Horan*, 22 Wash., 197, 60 Pac., 135.

Such general principle is recognized in *State, ex*

*rel. Webber,* v. *Shaw,* 103 Ohio St., 660, where, in the second syllabus, it is stated:

"2. When the annual meeting of the stockholders of a corporation has been regularly convened the stockholders may by action of a majority of the shares of stock represented in person or by proxy at such meeting adjourn the same to a future date subject to call, and during the interim between such annual meeting and the adjourned session stockholders may not legally call another meeting by virtue of the provisions of Section 8647, General Code."

We do not mean to say, of course, that any business transacted at a stockholders' meeting is invalid simply because the vote was not taken and recorded according to the number of shares voting, when there is no division or contest in reference to such matter, or where there was no objection to taking the vote otherwise, and no protest in reference to the result, but we do mean to say, as we have heretofore said, that it is the right of a stockholder to vote upon all matters at such stockholders' meeting in accordance with his interest in the corporation, as represented by the number of shares owned by him, and it is his right to have all questions determined upon that basis.

"It is competent for a business corporation to provide through a by-law that 'at stockholders' meetings each stockholder shall cast one vote for each share of stock owned by him,' unless such a method of voting is in conflict with the charter or with some general law on the subject. And such a by-law applies to the election of a chairman as well as to the proceedings after the meeting has been regularly organized. And the fact that at

previous meetings the chairman had without objection been selected by a count by the head cannot affect the question as to the legal method of voting when the question is made for the first time.'' *Procter Coal Co.* v. *Finley,* 98 Ky., 405.

In the case at bar the evidence discloses that the owners of a majority of the stock made timely request that the vote on adjournment be taken on the basis of the number of shares owned by each stockholder, and that the question be determined in accordance with such vote, and that when that request was refused the owners of a majority of the stock, present at the meeting, being a majority of the total stock of the corporation, then gave notice that the ruling of the chair was not acquiesced in; that the meeting was not legally adjourned; and that it would be continued. And it was continued, practically all the stock of the company being represented by persons present; but the Gray faction, protesting that they were there for another purpose, declined to participate further in the meeting.

We are clearly of the opinion that the meeting was not legally adjourned, that it was continued, that an election of directors was had by a majority of all of the stock of the corporation, and that therefore such directors so elected must be recognized as the board of directors having charge of the affairs of the corporation; the officers elected by such board are entitled to perform the duties of the offices to which they were so elected, and the former officers of the corporation must be denied all right to prevent the new officers from taking charge of and conducting the affairs of the corporation.

It may be, as claimed, that the conduct of some

members of one faction, not only as to private matters, but as to the business of the corporation, may be subject to severe censure and condemnation, while the motives and conduct of the other faction may not be subject to just criticism, nevertheless we cannot take such matters into consideration, but must determine the case upon principles of law, and without regard to the personalities of the interested parties.

The prayer of the petition is granted and a decree may be drawn accordingly. As the decree herein will dispose of the matters involved in case No. 807, *The Wooster Milling & Grain Co.* v. *Charles M. Gray et al.*, a decree may be drawn dismissing the petition of plaintiff and the cross-petition of defendant in that case, at the costs of Raymond T. Smith and others.

*Writ of ouster allowed.*

PARDEE, P. J., and FUNK, J., concur.